IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| PTA-FLA, Inc., | ) | C/A No. 3:11-cv-1605-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| ZTE USA, Inc., a New Jersey corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on motion of Defendant, ZTE USA, Inc., to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and to dismiss or stay this action. Plaintiff, PTA-FLA, Inc., opposes this motion based, primarily, on Defendant's alleged failure to satisfy a condition precedent to invocation of the arbitration provision: participation in senior level negotiations. In addition, Plaintiff argues that use of the word "may" in the relevant arbitration provision renders the provision non-mandatory in light of Defendant's failure to invoke the arbitration provision within the specified period.

For the reasons set forth below, the court finds neither argument persuasive. The court, therefore, grants Defendant's motion to compel and dismisses this action.

**BACKGROUND**

**Arbitration Provision.** Plaintiff's claims are founded on an alleged breach of a Master Supply Agreement ("Master Agreement"). Section 20 of the Agreement is entitled "Governing Law and Binding Arbitration" ("Arbitration Provision") and reads, in part, as follows:

> This Agreement shall be governed by the laws . . . of the State of Missouri. . . . Should any dispute, claim or controversy occur between the parties arising out of or relating to this Agreement, one party may give written notice of the dispute to the

1

>other party. The parties shall then, in the first instance, attempt to resolve such dispute or controversy in good faith *by senior level negotiations between the parties without attorneys present with a view to resolving the dispute within a period of fifteen (15) business days from the day notice of the dispute was given (the "Resolution Period"). Such negotiations shall include a personal meeting of at least four (4) hours duration attended by the senior U.S. Executive of each of the parties.* If the parties are unable to resolve the dispute within the Resolution Period, either party may, within ten (10) business days after the end of the Resolution Period, initiate an arbitration proceeding which shall be administered by the International Centre for Dispute Resolution of the American Arbitration Association ("AAA") in accordance with International Arbitration Rules. The place of arbitration shall be Jacksonville, Florida. The language of the arbitration shall be English.

Master Supply Agreement, § 20 (emphasis added).[1]

**History of Dispute**. The Master Agreement was entered between Defendant and Daredevil Inc. in September 2008. Although Plaintiff is not listed as a party to the Master Agreement, it does not dispute that its claims arise out of an alleged breach of the Master Agreement and are subject to that agreement's Arbitration Provision.

According to Plaintiff, it made multiple attempts to resolve the dispute in accordance with the Arbitration Provision but was frustrated in those attempts by Defendant's failure to comply with the requirements for good faith participation in "senior level negotiations." Specifically, Plaintiff alleges that it gave Defendant formal notice of the dispute on January 22, 2010, but Defendant failed

---

[1] The language emphasized in italics was replaced by an ellipsis in Defendant's opening memorandum. Dkt. No. 6-1 at 6. Plaintiff's opposition, in contrast, focuses on the italicized language. Dkt. No. 13 at 10. The remainder of the provision, which neither side quotes, reads as follows:

>The parties to this Agreement expressly agree that any order or award of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Unless otherwise agreed in writing, the costs of any arbitration shall be shared equally between the parties.

*See* Dkt. No. 7-1 at 21-22 (Agreement)

2

to respond to that notice until February 17, 2010, after the fifteen-day period specified in the Arbitration Provision for completion of senior level negotiations. Despite this failure, Plaintiff alleges it twice sent its senior executives to meet with Defendant's representative in an attempt to resolve the dispute. According to Plaintiff, Defendant failed to comply with the Arbitration Provision in two respects as to the first meeting in that it failed to send its senior U.S. Executive and the representative who did attend left after only forty minutes rather than the four hours specified in the Arbitration Provision. Plaintiff maintains that it took nearly nine months to set up the second meeting and that Defendant still failed to comply with relevant requirements because its representative (1) brought multiple attorneys to the meeting, (2) terminated the meeting in less than four hours, and (3) admitted he was unfamiliar with the background of the dispute and was not prepared for the meeting.

## FEDERAL ARBITRATION ACT

It is undisputed that the dispute as to arbitrability must be resolved under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq*. Under the FAA, the court compels arbitration if the movant, here Defendant, demonstrates "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation omitted).

As noted above, Plaintiff opposes arbitration based primarily on an alleged failure of a condition precedent to the invocation of the Arbitration Provision and, alternatively, on an argument that arbitration is optional due to use of the word "may" in the Arbitration Provision combined with Defendant's failure to affirmatively invoke arbitration within a specified period.

**DISCUSSION**

**I.     FAILURE OF CONDITION PRECEDENT**

Before considering the merits of Plaintiff's argument that arbitration is barred due to failure of a condition precedent, the court must determine whether this issue is for the court or the arbitrator to decide. As the United States Supreme Court explained in a line of cases beginning with *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), the answer to this question depends on whether the question is a jurisdictional question of arbitrability or whether it is a procedural question which grows out of the dispute and bears on its final disposition. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (discussing line of cases following *John Wiley*).

In *John Wiley*, the court considered a challenge to arbitration based on facts fairly similar to those now before this court. There, the party opposing arbitration (the employer) argued, *inter alia*, that the party seeking to compel arbitration (the union) was barred from doing so because arbitration was the third step in a multi-step grievance procedure and the union had failed to follow the first two steps. The employer also argued that the union had failed to comply with the time limits for providing notice which the applicable rules provided would "be deemed to be an abandonment of the grievance." *John Wiley*, 376 U.S. at 556, n.11. Addressing these arguments, the court explained:

> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. . . . It would be a curious rule which required that intertwined issues of "substance" and "procedure" growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result.

*Id.* at 557 (also noting that "[r]eservation of procedural issues for the courts would . . . not only create the difficult task of separating related [procedural from substantive] issues, but would also produce frequent duplication of effort" between the court and arbitrators).[2] *See also Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983) ("Although our holding in [*Prima Paint Corp. v. Flood & Conklin Mfg. Corp.*, 388 U.S. 395 (1967)] extended only to the specific issue presented, the courts of appeals have since consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

The dichotomy between procedural and jurisdictional issues was further explained in *Howsam*, where the court noted that *jurisdictional questions* of arbitrability address matters such as whether an arbitration clause in a concededly binding contract applies to the particular type of controversy or whether an arbitration agreement survived a corporate merger. *Id.* By contrast, *procedural questions* cover matters such as 'allegation[s] of waiver, delay, or a like defense to arbitrability" including "whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration" *Id.* (summarizing holdings of *Moses H. Cone* and *John Wiley*). As to procedural matters, the court applies a presumption that they are for resolution by the

---

[2] Despite its similarities, *John Wiley* is distinguishable in some respects. Most critically, the employer, which relied on the union's failure to participate in the earlier steps in the grievance process as a grounds for avoiding arbitration, had previously denied that the agreement which contained the arbitration provision controlled. By contrast, here Plaintiff (which now seeks to avoid arbitration) was the first to invoke the Master Agreement's dispute resolution procedures.

arbitrator (absent a clear indication in the agreement that they are not). As *Howsan* further explained:

> [T]he Revised Uniform Arbitration Act of 2000 (RUAA), seeking to "incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]," states that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp. 2002). And the comments add that "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for the court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met are for the arbitrators to decide." *Id.* § 6, comment 2, 7 U.L.A. at 13 (emphasis added).

*Howsam*, 537 U.S. at 84-85 ("[f]ollowing this precedent" in concluding that it was for the arbitrators to decide whether an arbitration rule which set a time limit for invoking arbitration applied and, under the facts presented, barred pursuit of arbitration).

Although the Fourth Circuit has not yet applied the *John Wiley-Howsam* line of cases to facts similar to those presented in this action, it has considered that line of cases in two fairly recent decisions. For example, in *Dockser v. Schwartzberg,* 433 F.3d 421 (4th Cir. 2006), the court relied on the *John Wiley-Howsam* line of cases in holding that procedural questions such as whether arbitration should be conducted by one or three arbitrators were for resolution in arbitration, rather than the court. In reaching this conclusion, the court summarized the rulings of *John Wiley* and *Howsam* as follows:

> The Supreme Court has instructed that "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge but for an arbitrator to decide." [citing *Howsam*] Not only would it be extremely difficult to cleanly separate disputes into "procedural" and "substantive components, but attempting to do so would risk duplication of effort – because "the arbitrator would ordinarily remain free to reconsider the ground covered by the court insofar as it bore on the merits of the dispute" – and delay. [citing *John Wiley*]

433 F.3d at 425-26; *see also id.* at 427 (rejecting argument that this created a "chicken and egg"

6

problem as some number of arbitrators must decide how many arbitrators are required) . Similarly, in *Central W. Va. Energy, Inc., v. Bayer Cropscience LP,* 645 F.3d 267 (4th Cir. 2011), the court held that questions as to which of two competing agreements (each with its own arbitration provision) controlled and, consequently, where the arbitration should be held were procedural questions which should be resolved by the arbitrators.[3] While neither of these cases addressed the impact of an alleged failure of a condition precedent to arbitration, both recognized the division of authority for procedural versus jurisdictional questions, with the former being for the arbitrators and the latter for the court. Both also recited that the court was to "resolve ' any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *Bayer*, 645 F.3d at 272 (quoting *Moses H. Cone*); *Dockser*, 433 F.3d at 425 (same).

More on point is the recent First Circuit decision in *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367 (1st Cir. 2011). There, the court considered whether the court or arbitrator should decide whether arbitration was barred by failure of a "supposed precondition that the parties engage in good faith negotiations prior to arbitration." *Id.* at 375. The arbitration provision at issue in *Dialysis Access* provided that the parties "shall use good faith negotiation to resolve any dispute that may arise under this Agreement. . . . In the event [the parties] cannot reach agreement on any issue, such issue will be settled by binding arbitration[.]" *Id.* at 371.

As the First Circuit explained:

> The parties disagree over whether the Arbitration Clause in fact establishes a condition precedent to arbitration requiring that the parties engage in good faith negotiations. Nevertheless, *we do not have to resolve this disagreement because*,

---

[3] *Bayer* addressed these issues on review of an arbitration decision, rather than on motion to compel arbitration. The standards applied were, however, the same. *See Bayer*, 645 F.3d at 272, n.3.

7

> assuming arguendo that the Arbitration Clause establishes such a pre-condition to arbitration, *Appellants have not rebutted the presumption that the arbitrator should decide whether the parties complied with such a procedural pre-requisite to arbitration*.

*Id.* at 383 (citing *Howsam* and *John Wiley*).

The court finds the First Circuit's analysis persuasive. Applying that analysis to the present dispute, the court concludes that any argument that Defendant failed to satisfy a condition precedent to arbitration by failing to participate in pre-arbitration proceedings in good faith is a matter for resolution by the arbitration panel. Plaintiff's cited authority does not support a different result for reasons addressed below.

***Kansas Gas***. For example, Plaintiff relies on *Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.,* 861 F.2d 420, 423 (4th Cir. 1988), in arguing that the Fourth Circuit requires the court to determine whether a condition precedent to arbitration has been satisfied. Plaintiff's reliance on *Kansas Gas* is misplaced as the condition precedent at issue there related to the subject matter of the dispute, not a procedural prerequisite. Moreover, the underlying facts were undisputed allowing the court to "say with positive assurance that the arbitration clause [was] not susceptible of an interpretation that cover[ed] the asserted dispute." *Id.*

***Purdue Farms***. Plaintiff also relies on the more recent, unpublished Fourth Circuit decision in *Purdue Farms, Inc. v. Design Build Contracting Corp.*, 263 Fed. Appx. 380, 2008 WL 345430 (4th Cir. 2008). There, the court was faced with a contract which, due to modifications from a standard form, "'eliminated . . . a broad mandatory arbitration clause' and instead conditioned arbitration on [failure of] voluntary mediation." *Purdue Farms*, 263 Fed. Appx. at 382 (quoting district court decision). As the Fourth Circuit noted, *mediation* was required *only* "'if mutually agreed[,]'" and a*rbitration* was required only for "claims 'not resolved by mediation[.]'" *Id.* at 383

8

(quoting contract). Thus, "arbitration [was] mandatory only where the parties mutually agree to mediate the claims, in fact do attempt to mediate the claims, and fail." *Id*. Because it was undisputed that none of these events had occurred, the court found a condition precedent to arbitration lacking.

In reaching this conclusion the court quoted *Kansas Gas* for the proposition that, "[w]here a condition precedent to arbitration is not fulfilled, a party to a contract does not have a right to arbitration." *Id.* (also noting that "[w]here the plain language of an article is to limit arbitration, then such clauses will be enforced."); *see also id*. at 384 (holding parties "explicitly limited the instances in which they intended to arbitrate" and that, despite the policy of favoring arbitration, the FAA "cannot override a contract that clearly does not allow for arbitration in the instances in which [the moving party] seeks it."). The court did not mention *John Wiley* or *Howsam*, or address the possibility that the basis for challenging arbitration might raise procedural concerns subject to resolution by the arbitrator(s).[4] Thus, the unpublished *Purdue Farms* decision offers no guidance as to how the court would apply the *John Wiley-Howsam* line to a purely procedural prerequisite such as the one at issue in this case.

*Purdue Farms* is, in any event, distinguishable from the present case as the "condition precedent" at issue there, even if arguably procedural, was one which made the *entire* alternative dispute process a matter of election (optional mediation, followed by arbitration if mediation failed). Moreover, there was no dispute that this election had not occurred.

Unlike the optional mediation-arbitration provision addressed in *Purdue Farms*, the

---

[4] Neither case was mentioned in *Kansas Gas* which was decided prior to *Howsam*, and, consequently, could not have considered that decision. While *John Wiley* was decided prior to *Kansas Gas*, it was inapplicable given that *Kansas Gas* was addressing a substantive rather than a procedural prerequisite to arbitration.

9

Arbitration Provision at issue in this case provides for a mandatory, multi-step dispute resolution process, beginning with notice of the dispute (which was given by Plaintiff) and followed by senior level negotiations (which the parties twice attempted to conduct, although Defendant's efforts may have been deficient). The Arbitration Provision then provides as follows: "If the parties are unable to resolve the dispute within the Resolution Period, either party may, within ten (10) business days after the end of the Resolution Period, initiate an arbitration proceeding[.]" At the least, this language is reasonably susceptible to an interpretation that arbitration is the required next step if the first step (senior level negotiations) fails to resolve the dispute for any reason including one party's failure to participate in those meetings in good faith.[5] In short, while one interpretation of the Arbitration Provision and the facts as presented by Plaintiff may favor Plaintiff's position, the court cannot conclude that the Arbitration Provision here "clearly does not allow for arbitration in the instances in which [Defendant] seeks it." *Purdue Farms*, 263 Fed. Appx. at 384.

**Out-of-Circuit Authority.** Plaintiff also relies on *HIM Portland, LLC v. Devito Bldrs., Inc.*, 371 F.3d 41 (1st Cir. 2003), which, similar to *Purdue Farms*, denied a motion to dismiss or compel arbitration where "the plain language of the contract manifested the parties' clear intent to require mediation as a condition precedent to arbitration" and where mediation had not occurred. *Id.* at 43 (summarizing district court's reasoning).[6] For reasons explained above (distinguishing *Purdue*

---

[5] Whether Defendant's participation in the senior level negotiations was deficient so as to constitute a failure of a condition precedent to arbitration requires resolution of factual disputes (including what inferences should be drawn from facts which may not be in dispute) and construction of the terms of the contract. These are matters which overlap with the merits of the dispute and should be resolved by the arbitrator in the first instance.

[6] The court noted that the party seeking arbitration concentrated on language which, taken out of context, might make mediation a suggested but not mandatory prerequisite. *Id.* at 44. However, "other provisions of the contract state[d] in the plainest possible language that mediation is a condition precedent to arbitration." *Id.* (quoting contract language which stated that disputes

10

*Farms*), neither the Arbitration Provision at issue in this action nor the facts are so clear. In any event, the more recent First Circuit decision in *Dialysis Access* (discussed *supra*) is more on point and persuades this court that procedural defenses to arbitration such as those raised by Plaintiff should be reserved for resolution by the arbitrator(s).

Plaintiff also relies on the Eleventh Circuit decision in *Kemiron Atlantic, Inc., v. Aguakem Int'l., Inc.*, 290 F.3d 1287 (11th Cir. 2002). This is arguably the strongest case favoring Plaintiff's position as it denied a motion to compel arbitration based on failure of a condition precedent under an arbitration clause which read, in relevant part, as follows:

> In the event that a dispute cannot be settled between the parties, the matter shall be mediated within fifteen (15) days after receipt of notice by either party that the other party requests the mediation of a dispute pursuant to this paragraph. . . .
>
> In the event that the dispute cannot be settled through mediation, the parties shall submit the matter to arbitration within ten (10) days after receipt of notice by either party.

*Kemiron*, 290 F.3d at 1289 (quoting arbitration clause). The district court held that this language required mediation as a prerequisite to arbitration, which had not occurred, and also found "that neither party gave notice to mediate or to arbitrate." *Id.* at 1290. Thus, "the duty to arbitrate was not triggered." *Id.* The Eleventh Circuit affirmed, holding that

> under the plain language of the contract, to invoke the arbitration provision, either party must take two steps: first, [one of them] must request mediation and provide notice of the request to the other party. If the mediation subsequently fails, arbitration still cannot take place. The aggrieved party must then take a second step, by providing additional notice, under the terms of the contract, that they wish to pursue arbitration. Then, and only then, is the arbitration provision triggered.

*Id.* at 1291. Noting that it was undisputed that neither party had made a demand for mediation or

---

arising out of the contract "shall . . . be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings").

11

arbitration, even as of the date of the appeal, the court held that "[b]ecause neither party requested mediation, the arbitration provision has not been activated[.]" *Id.*

This court does not find the language in the Arbitration Provision or the facts at issue here quite so clear. Assuming without deciding that participation in senior level negotiations constitutes a condition precedent to arbitration, there were two such meetings conducted. Plaintiff's arguments in this case, therefore, do not focus on the total absence of such meetings but on Defendant's alleged failure to fully comply with the requirements. A determination whether this alleged condition precedent occurred, therefore, requires resolution of disputed issues of fact and contract interpretation. The court, therefore, leaves this issue for resolution by the arbitrator(s) for reasons addressed in *John Wiley*, *Howsam*, and *Dialysis Access*.[7]

## II.    "OPTIONAL" NATURE OF ARBITRATION PROVISION

Plaintiff also argues that the Arbitration Provision was optional because it uses the word "may" in stating that either party may seek arbitration if the dispute is not resolved within the Resolution Period (during which period the parties were to participate in senior level negotiations). Dkt. No. 13 at 12. Although it characterizes arbitration as "optional," this argument focuses on Defendant's failure "to demand arbitration . . . within the ten (10) days following the Resolution Period." To this extent, Plaintiff's argument is more in the nature of a second argument that Defendant failed to comply with a condition precedent to arbitration. For reasons explained above, such arguments are for resolution by the arbitrator(s), not the court.

---

[7] Plaintiff also relies on two state court decisions for the proposition that the court should decide whether a condition precedent to arbitration has been satisfied. *See* Dkt. No. 13 at 8 (citing *Hubbard Const. Co. v. Jacobs Civil, Inc.*, 969 So. 2d 1069, 1072 (Fla. Ct. App. 2007), and *County of Rockland v. Primiano Const. Co., Inc.*, 409 N.E.2d 951, 953-54 (N.Y. Ct. App. 1980). These cases are not persuasive as they are not decided under the FAA.

To the extent Plaintiff is arguing that arbitration was rendered optional by use of the word "may" (irrespective of any condition precedent), its argument fails for reasons addressed in *U.S. v. Bankers Ins. Co.*, 245 F.3d 315, 320-21 (4th Cir. 2001). There, the Fourth Circuit held that use of the word "may" in an arbitration provision did not render arbitration optional as the "option" offered by use of the word "may" was a choice between proceeding with arbitration or abandoning the claim.

> Although the arbitration provision of the [Agreement] is framed in permissive terms [using the word "may"], its use of permissive phraseology is not dispositive. In *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996), we had occasion to review and interpret a similar arbitration provision. We held that a clause providing that "disputes . . . may be referred to arbitration" has the effect of giving "an aggrieved party the choice between arbitration and abandonment of his claim, [*i.e.*,] he 'may' either arbitrate or abandon the claim." *Id*. at 879. As Judge Widener properly observed, the contrary interpretation "would render the arbitration provision meaningless for all practical purposes[,]" since parties "could always voluntarily submit[ ] to arbitration[.]" *Id*.

*Id.* at 320-21 (editing marks in original).

The arbitration provision at issue in *Bankers Ins.* read as follows: "If any misunderstanding or dispute arises between the Company [Bankers] and the FIA with reference to any factual issue under any provisions of this [Agreement] . . . such misunderstanding or dispute *may* be submitted to arbitration for a determination [that] shall be binding upon approval by the FIA." *Id.* at 318 (emphasis added). Thus, the word "may" introduced the entire dispute resolution provision. An even stronger argument for finding arbitration mandatory may be made in the present case because the dispute resolution provision, as a whole, is not only introduced in mandatory ("shall") language, but was indisputably invoked (by Plaintiff's notice of the dispute and pursuit of senior level negotiations). Thus, read in the context of the full Arbitration Provision, the use of the word "may," in stating that the parties "may" seek arbitration if the matter is not resolved through senior level

negotiations, gives the parties the choice between seeking further dispute resolution through arbitration or abandoning their claims.

## CONCLUSION

For the reasons set forth above, the court grants Defendant's motion to compel arbitration. As neither party has presented any argument favoring a stay over dismissal, the court dismisses this action without prejudice, leaving the underlying dispute for resolution through the arbitration process.

**IT IS SO ORDERED**.

                                              s/ Cameron McGowan Currie
                                              CAMERON MCGOWAN CURRIE
                                              UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 3, 2011